IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MEDFORD DIVISION

JERRY W. HUFFMAN,                                          Case No. 1:14-cv-00861-AC

               Plaintiff,                              OPINION AND ORDER

vs.

CAROLYN W. COLVIN,
Commissioner of Social Security,

               Defendant.

———————————————————

ARTHUR W. STEVENS III
Black, Chapman, Webber & Stevens
221 Stewart Ave., Suite 209
Medford, OR 97501
        Attorney for plaintiff

BILLY WILLIAMS
Interim United States Attorney
District of Oregon
RONALD K. SILVER
Assistant United States Attorney
1000 SW Third Ave., Suite 600
Portland, OR 97201-2902


1 - OPINION AND ORDER

JOHN C. LAMONT
Special Assistant United States Attorney
Office of the General Counsel
Social Security Administration
701 Fifth Ave., Suite 2900 M/S 221A
Seattle, WA 98104-7075
        Attorneys for defendant

ACOSTA, Magistrate Judge:

        Jerry Huffman ("plaintiff") seeks judicial review of a final decision by the Commissioner of Social Security ("Commissioner") denying his application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("Act"). This court has jurisdiction to review the Commissioner's decision pursuant to 42 U.S.C. § 405(g). Based on a careful review of the record, the Commissioner's decision is reversed and this case is remanded for immediate payment of benefits.

*Procedural Background*

        Plaintiff applied for SSI on February 19, 2010, alleging disability as of August 1, 1990, due to Crohn's disease and depression. (Tr. 225, 239, 245.) His application was denied initially and upon reconsideration. (Tr. 158-161, 165-67.) A hearing was held on January 26, 2012, before an Administrative Law Judge ("ALJ"). (Tr. 51-90.) On February 24, 2012, the ALJ issued a decision finding plaintiff not disabled. (Tr. 29-43.) Plaintiff timely requested review of the ALJ's decision and, after the Appeals Council denied review, plaintiff filed a complaint in this Court. (Tr. 1-6.)

*Factual Background*

        Born on August 25, 1970, plaintiff was 19 years old on the alleged onset date of disability and 41 years old at the time of the hearing. (Tr. 29, 225.) He attended school until the tenth grade and did not obtain a GED. (Tr. 246.) Plaintiff previously worked in construction. (Tr. 246-47.)

2 - OPINION AND ORDER

*Standard of Review*

The court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation and internal quotations omitted). The court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusions." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). "Where the evidence as a whole can support either a grant or a denial, [a court] may not substitute [its] judgment for the ALJ's." *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007) (citation omitted).

The initial burden of proof rests upon the claimant to establish disability. *Howard v. Heckler*, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, the claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner has established a five-step sequential process for determining whether a person is disabled. *Bowen v. Yuckert*, 42 U.S. 137, 140 (1987); 20 C.F.R. § 404.1520. First, the Commissioner determines whether a claimant is engaged in "substantial gainful activity;" if so, the claimant is not disabled. *Yuckert*, 482 U.S. at 140; 20 C.F.R. § 404.1520(b).

At step two, the Commissioner resolves whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140-41; 20 C.F.R. § 404.1520(c). If not, the claimant is not disabled. *Yuckert*, 482 U.S. at 141.

At step three, the Commissioner evaluates whether the claimant's impairment meets or equals "one of a number of listed impairments that the Secretary acknowledges are so severe as to preclude substantial gainful activity." *Id.*; 20 C.F.R. § 404.1520(d). If so, the claimant is presumed disabled; if not, the Commissioner proceeds to step four. *Yuckert*, 482 U.S. at 141.

At step four, the Commissioner determines whether the claimant still can perform "past relevant work." *Yuckert*, 482 U.S. at 141; 20 C.F.R. § 404.1520(f). If the claimant can work, she is not disabled; if she cannot perform past relevant work, the burden shifts to the Commissioner. *Yuckert*, 482 U.S. at 141.

At step five, the Commissioner must establish that the claimant can perform other work existing in significant numbers in the national or local economy. *Id.* at 142; 20 C.F.R. § 404.1520(g). If the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R. § 404.1566.

*The ALJ's Findings*

At step one of the five-step sequential evaluation process, the ALJ found plaintiff had not engaged in substantial gainful activity since February 9, 2010, the application date. (Tr. 31.) At step two, the ALJ found plaintiff had the following severe impairments: "Crohn's disease, history of torn medial and lateral meniscus in the . . . left knee and grade I degenerative arthritis in the . . . right knee, and adjustment disorder with mixed depression and anxiety." *Id.* At step three, the ALJ found plaintiff's impairments did not meet or equal the requirements of a listed impairment. (Tr. 33.)

Accordingly, the ALJ continued the sequential evaluation process to determine how plaintiff's medical limitations affected his ability to work. The ALJ resolved that plaintiff had the residual functional capacity ("RFC") to: "lift and carry 50 pounds occasionally and 25 pounds

Page 4 - OPINION AND ORDER

frequently, and stand and walk for two hours in an eight-hour workday . . . occasionally engage in postural activities . . . cannot climb ladders, ropes, or scaffolds . . . must not be exposed to heights or hazards . . . [and] would be limited to performing simple to moderately complex work." (Tr. 35.)

At step four, the ALJ concluded that plaintiff was unable to perform any past relevant work. (Tr. 40.) At step five, the ALJ concluded that plaintiff had the RFC to perform the following representative occupations: document preparer, film touch-up inspector, and food and beverage order clerk. (Tr. 42.) Therefore, the ALJ determined plaintiff was not disabled within the meaning of the Act. (Tr. 43.)

*Discussion*

I.  Plaintiff's Credibility

The ALJ's decision to not award benefits was based primarily on plaintiff's negative credibility assessment. The medical opinion evidence is sparse. Plaintiff argues the credibility assessment was erroneous, which led to error at steps three, four, and five. Pl.'s Opening Br. 7-25. Defendant maintains the ALJ's credibility analysis was supported by substantial evidence and free of harmful legal error. Def.'s Br.6-17. The ALJ assigned plaintiff's allegations of disabling symptoms "little weight." (Tr. 40.) When a plaintiff has medically documented impairments that could reasonably be expected to produce some degree of the symptoms complained of, and the record contains no affirmative evidence of malingering, the ALJ must present clear and convincing reasons for rejecting the plaintiff's testimony. *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996) (citation omitted). Nonetheless, an ALJ may engage in ordinary techniques of credibility evaluation, such as considering plaintiff's reputation for truthfulness and inconsistencies in plaintiff's testimony. *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005). However, a general assertion that the plaintiff

Page 5 - OPINION AND ORDER

is not credible is insufficient; the ALJ must "state which . . . testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). As long as the ALJ's credibility finding is supported by substantial evidence in the record, the Court may not engage in second-guessing. *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002).

### A. Physicians' Assessments Inconsistent with Plaintiff's Account

The ALJ indicated "no physician or psychologist supports the [plaintiff's] allegations . . . all the treating, examining, and reviewing physicians provided assessments in no way consistent with [plaintiff's] account." (Tr. 39.) As recited above, the ALJ must identify specific, clear and convincing reasons in order to reject plaintiff's testimony. *Smolen*, 80 F.3d at 1281. The ALJ's sweeping statement is not specific. Further, there are numerous medical "assessments" by physicians in the record which substantiate at least some of plaintiff's symptoms allegations. Presumably, the ALJ adopted these assessments in finding plaintiff had the severe impairments of Crohn's disease, bilateral knee impairments, and adjustment disorder mixed with depression and anxiety at step two. (Tr. 31.) The ALJ's statement quoted above lacks specificity and is therefore erroneous.

### B. Plaintiff's Drug Use

The ALJ indicated plaintiff's alleged drug use and possible drug-seeking behavior undermined his credibility. (Tr. 39.) Specifically, the ALJ noted three incidents involving plaintiff's alleged use or attempts to procure drugs, explaining "inconsistent truthfulness in the [plaintiff's] interactions with his treating sources . . . undermines the credibility of [his] allegations in general." *Id.* Plaintiff argues that none of the incidences cited by the ALJ legitimately impugn his credibility. Pl.'s Opening Br. 21-23.

First, the ALJ noted plaintiff had "possible drug seeking behavior in November 2011, citing tr. 1174. (Tr. 39.) Review of the record reveals plaintiff visited the emergency department in Grants Pass on November 5, 2011, with a primary complaint of: "History of kidney stones. He had a stent placed. Hematuria. Out of pain medications." (Tr. 1173.) The treating physician, physician's assistant Tatyana Wright, noted plaintiff had been to the ER a few weeks before on October 21, 2011 with "similar complaints." *Id.* Plaintiff reported having obtained a short course of pain medication from his urologist four days before, but was experiencing extreme pain and had exhausted his supply of Norco. *Id.* Ms. Wright provided another short course of Norco, explaining to plaintiff that the hospital "does not refill pain medications," and suggested he schedule an appointment with his urologist. (Tr. 1174.) She diagnosed nephrolithisasis (kidney stones), medication refill, and urinary tract infection. *Id.*

Independent review of the November 5, 2011 chart note does not reveal any persuasive indications of drug-seeking behavior. While the physician's assistant indicated that returning to the hospital was not the preferred avenue to obtain prescription refills, she did not report that plaintiff was nefariously drug-seeking, malingering, or exaggerating his symptoms. (Tr. 1173-75.) Further, she proceeded to provide plaintiff with a refill of pain medication, and advised him to return to the emergency department if he had any recurrence of symptoms. (Tr. 1174-75.) Moreover, she diagnosed plaintiff with kidney stones and a urinary tract infection, both of which are commonly known to be often extremely painful conditions. Accordingly, the ALJ erred to the extent he impugned plaintiff's credibility based on the November 2011 emergency room visit – specifically, his rationale is not clear and convincing.

The ALJ also noted plaintiff had "'dirty' urine samples in February 2010." (Tr. 39.) The

record reflects that plaintiff was treated by family nurse practitioner ("FNP") Roger Fogg on February 3, 2010, who indicated "the only reason [plaintiff] is not still on his Vicodin is because of dirty urines." (Tr. 382.)  FNP Fogg explained plaintiff was "to get medications from me and only from me." *Id.*  It appears plaintiff's "Ameritox" urine screenings were showing other medications in his system, which plaintiff explained at the hearing occurred because he took some pain medication prescribed for his brother-in-law following hospitalization for a Crohn's disease flare-up. Pl.'s Opening Br. 22; (Tr. 79.).  Despite plaintiff's apparent noncompliance with his medication regimen, FNP Fogg continued to prescribe plaintiff Vicodin for knee pain.  (Tr. 382).  Again, although there was apparent noncompliance and "dirty urine," plaintiff's physician did not report exaggeration of symptoms or characterize plaintiff's behavior as drug-seeking.  (Tr. 382-83.)

Defendant argues that pursuant to *Edlund v. Massanari*, 253 F.3d 1152, 1157 (9th Cir. 2001), "where the evidence supports the inference that the [plaintiff] engaged in drug-seeking behavior, the ALJ may conclude the [plaintiff] is not a credible source of evidence about his impairments." Def.'s Br. 8.  However, in *Edlund*, the plaintiff was reported to have been exaggerating his symptoms in order to receive pain medication.  *Id.*  Here, there is no evidence supporting pain exaggeration; rather, the record reflects FNP Fogg's belief that plaintiff's complaints were legitimate, supported by his decision to prescribe additional Vicodin. (Tr. 382.)  As such, the single chart note cited by the ALJ in support of his reasoning is not legally sufficient.

Although FNP Fogg's chart note could be interpreted as an indictment of plaintiff's failure to comply with his medical treatment, the ALJ did not invoke that reasoning in questioning plaintiff's veracity, and thus the Commissioner may not now rely upon it. *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003) (the court is constrained to review the reasons asserted by the ALJ)

(citing *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947)).  Similarly, while defendant proffers several other examples of alleged drug-seeking behavior not invoked by the ALJ, including chart notes from treatment by Linford Beachy, M.D., they are similarly precluded as grounds to affirm the ALJ's decision. *Id.*; Def.'s Br. 9-10.

Finally, the ALJ noted that in October 2009, plaintiff allegedly requested pain medication in order to allow him to work as a long-range truck driver. (Tr. 39.)  Independent review of the chart note in question reveals that on October 29, 2009, plaintiff indicated to FNP Fogg that he "ha[d] gotten on with Job Corps and [was] getting set up to do long haul truck driving." (Tr. 387.)  In the next sentence of the chart note, FNP Fogg wrote that plaintiff "states he has not been in for a long time and would like [a] refill of pain medications."  *Id.*  The physician indicated he would not prescribe the Norco requested, so instead he prescribed Tramadol for plaintiff's back and bilateral knee pain. (Tr. 386.)  Plaintiff argues, and the court agrees, that the ALJ erroneously assumed plaintiff was requesting pain medication to allow him to work as a truck driver.  During the hearing, the ALJ stated, "there's [sic] some records here in 2010 indicating you wanted pain medication because you were going to be doing long-haul truck driving." (Tr. 60.)  Plaintiff replied, "[n]o, I never followed through with the classes." *Id.*  The ALJ then asked, "[w]ell, why would you tell them you need medication since you're driving a truck?", apparently questioning the wisdom of driving while taking narcotic pain medication.  Plaintiff then replied, "[t]hat's what I don't understand.  I don't see where this is coming from . . . I've never had the job or never even tried to get the job." *Id.*  The Court understands plaintiff's confusion about the ALJ's line of questioning – it seems the ALJ assumed that plaintiff was requesting medication in order to drive a truck; however, that conclusion does not logically follow from the chart note. (Tr. 386.)  Further, plaintiff's additional

Page 9 - OPINION AND ORDER

explanation that he had never actually worked as a truck driver, and ultimately decided that the occupation would not suit him, should have sufficiently resolved any confusion on the matter. (Tr. 61-62.) The ALJ's rationale is not supported by substantial evidence.

As such, none of the examples of possible drug-seeking behavior cited by the ALJ in his decision are legally sufficient.

### C. Conservative/Effective Treatment

The ALJ indicated plaintiff's symptom allegations were not credible because the record reflected conservative and effective treatment of plaintiff's impairments. (Tr. 39.) Evidence of conservative treatment is sufficient to discount a plaintiff's testimony regarding the severity of an impairment. *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007) (citation omitted). Additionally, impairments that are adequately controlled with treatment are not disabling. *Warre v. Comm'r of SSA*, 439 F.3d 1001, 1006 (9th Cir. 2006). Regarding plaintiff's Crohn's disease, the ALJ indicated that despite plaintiff's many medications for the condition, "two separate treating sources acknowledged . . . [its] stable condition." *Id.* However, the ALJ erred in drawing the inference that stability entailed ability to work.

The first chart note cited by the ALJ is from February 12, 2010, when plaintiff presented for rectal bleeding along with abdominal cramps and chronic diarrhea. (Tr. 471.) One treating physician, Amer Al-Khoudari, M.D., indicated plaintiff was experiencing an acute exacerbation of Crohn's disease. (Tr. 472.) He admitted plaintiff to the hospital in order to administer IV medication. *Id.* The doctor noted "[i]t seems like his medications have been holding him in remission for a long time." *Id.* While this statement could be interpreted as indicating plaintiff's Crohn's symptoms were in remission at some point in the past, there are no specific findings

indicating as much in the record.  Rather, plaintiff was treated for symptoms of Crohn's in 2008 and 2009, and his primary physician, FNP Fogg, did not give any indication that plaintiff's Crohn's was in remission.  *See* (Tr. 394-424.)  Further, in February and November of 2007, physicians indicated that plaintiff "would need to have a GI [gastrointestinal] consult to discuss other new therapies for his Crohn's," and "he has had trouble with diarrhea and stomach aches secondary to his Crohn's." (Tr. 416, 423.)

Additional records mention plaintiff's Crohn's issues in the 1990's and before.  *See, e.g.*, (Tr. 441, 552, 564.)  Further, no other doctor who treated plaintiff for any length of time mentioned remission, and Dr. Khoudari was certainly not indicating plaintiff was stable or in remission at the time of his examination.  (Tr. 472.)  Thus, in context of the entire record, Dr. Khoudari's impression that plaintiff seemed to have been in remission is not convincing evidence of remission.  An ALJ may not selectively consider evidence to support the conclusion that a plaintiff is not disabled; rather, the ALJ must consider the evidence as a whole in arriving at a conclusion based on substantial evidence.  *Holohan v. Massanari*, 246 F.3d 1195, 1207 (9th Cir. 2001) ("[T]he ALJ selectively relied on some entries in Holohan's records . . . and ignored the many others that indicated continued, severe impairment.").

The second record cited by the ALJ in support of his finding was completed by Anthony Haulk, M.D. on March 1, 2011.  (Tr. 732.)  Plaintiff's chief complaint during that visit was "Crohn's," and he reported continuing watery diarrhea with five-to-seven bowel movements per day. *Id.*  The doctor assessed regional enteritis and "Crohn's (granulomatous) colitis." *Id.*  The doctor also noted the Crohn's disease "seemed relatively stable on current rx." *Id.*  Plaintiff asserts that the ALJ erred in interpreting the term "stable" to mean the ability to perform gainful work. Pl.'s Br. 20.

The court agrees.  In the context of plaintiff's Crohn's condition, even if plaintiff's condition is stable, it does not necessarily mean that plaintiff can perform regular work as defined by the Act, including the requirement to abide by typical break periods.  *Holohan*, 246 F.3d at 1205 (a plaintiff's improved condition does not mean that his impairment no longer seriously affects his ability to maintain gainful employment) (citations omitted).  The ALJ's conclusion is even less convincing considering Dr. Haulk qualified his observation with the "seemed relatively" predicate.  By interpreting the phrase "seemed relatively stable" to mean the ability to perform regular work, the ALJ based his opinion on an inference that cannot reasonably be drawn from the record, particularly considering plaintiff was having five-to-seven bowel movements each day.  *See Widmark v. Barnhart*, 454 F.3d 1063, 1068 (9th Cir. 2006).

Based on the foregoing, the ALJ did not provide clear and convincing evidence that alleged conservative or effective treatment impugned his credibility.[1]

### D.  Poor Work History/Failure to Report Income

The ALJ indicated plaintiff's credibility was impugned by his poor work history, and failure to report income he earned while employed by his father.  (Tr. 39.)  In support, defendant directs the court to *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006), wherein the plaintiff was found not credible because he did carpentry work "under the table" after his date last insured.  *Id.*  However, the case is not directly on point.  In *Greger*, the ALJ found the plaintiff's carpentry work relevant to the extent it showed plaintiff was still able to perform work beyond the date last insured, not

---

[1] The ALJ also explained that conservative and/or effective treatment of plaintiff's bilateral knees and psychological impairments impugned the veracity of plaintiff's symptom testimony regarding those impairments.  (Tr. 39.)  However, because plaintiff's Crohn's condition alone is dispositive, the Court declines to further address the other severe impairments.

because the work was not reported to the IRS. *Id.* Here, plaintiff was forthright in expressing during hearing that he did not report the roughly $400.00 per month he earned while working for his father. (Tr. 63.) When asked why he did not report the income, plaintiff explained that he was under the impression he was not required to report such a small sum. (Tr. 63-64.) The ALJ found plaintiff's failure to report his income "undermine[d] the overall credibility of the [plaintiff's] allegations." However, this finding is not clear and convincing, given plaintiff's admission that he did not report the income and providing a reason for not doing so. Further, although plaintiff has a limited work history, he nonetheless explained the reasons for this, including staying at home with his children while his wife went to work, and his inability to work regular hours because of Crohn's symptoms. (Tr. 57-59, 65.) Moreover, the ALJ failed to state with specificity which testimony and/or pain allegation was not credible based on his poor work record and failure to report income. Accordingly, the ALJ's adverse credibility findings on these issues were not clear and convincing.

### E.  Activities of Daily Living

The ALJ found plaintiff's activities of daily living ("ADLs") were inconsistent with his alleged level of impairment. (Tr. 40.) In support, the ALJ stated that his activities "tend to show . . . the ability to perform work." *Id.* The ALJ further cited plaintiff's testimony that he can perform personal care, works around his home including laundry, light cleaning, driving, shopping, lawn-mowing via riding mower, and caring for his daughter. *Id.* However, the fact that plaintiff is able to perform some work, and complete some household chores and childcare, does not necessarily translate to the ability to perform full-time work as defined by the Act. *See Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) ("[M]any home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or

take medication."). The issue is particularly important to consider for plaintiffs who can generally perform a variety of occupational activities, but due to the nature of an impairment, must take a number of unscheduled breaks throughout a workday. *See Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) (An adverse credibility finding using ADLs must be based on either a contradiction in the plaintiff's testimony or proof that the ADLs meet a threshold for transferable work skills.).

Here, plaintiff alleges his Crohn's disease would be an impediment because it causes him to spend inordinate amounts of time "running back and forth to the bathroom." (Tr. 65.) He explained he was able to perform some work for his father because "[n]obody's marking down every time I run to the bathroom . . . ." (Tr. 69.) Plaintiff indicated that although his Crohn's disease was stabilized, he was still using the bathroom 10-15 times per day.[2] (Tr. 70.) Thus, while plaintiff may have been able to perform the ADLs he testified to, the ALJ did not establish that he was able to perform them without taking many breaks, and therefore did not establish that plaintiff's allegations were inconsistent with his alleged level of impairment. Similarly, the mere fact that plaintiff was able to build a deck in an undefined amount of time and while taking an undefined number of breaks does not establish that his symptoms were not severe. As such, the ALJ's rationale is legally deficient.

### F. Objective Evidence in Support of Plaintiff's Allegations

The ALJ indicated that "the objective evidence does not support the [plaintiff's] allegations . . . there is simply not enough evidence of debilitating impairments to make the allegations readily believable." (Tr. 39.) While lack of objective evidence may be one reason to discount a plaintiff's

---

[2] The Court notes that, significantly, the ALJ did not make any finding or identify any evidence in the record suggesting that plaintiff's allegations about the frequency and duration of his multiple daily trips to the bathroom were not credible.

credibility, it cannot be the sole reason. *Rollins v. Massanari*, 261 F.3d 853, 855 (9th Cir. 2001). Because the Court, for the reasons explained above, found the other reasons cited by the ALJ not clear and convincing, lack of objective evidence is an inadequate basis upon which to discredit plaintiff's testimony.

In sum, the ALJ failed to provide legally sufficient rationales for discrediting plaintiff's testimony; therefore, the adverse credibility finding is be reversed.

II.  Lay Witness Testimony

Plaintiff argues that the ALJ erred in rejecting the lay witness testimony of his father, Oris W. Huffman.  Pl.'s Opening Br. 25.  The ALJ indicated he considered the third-party functional report of Mrs. Huffman, and third-party statement of Mr. Huffman, but indicated that "overall, the Huffmans' accounts conflict with and fail to overcome the probative effect of the medical evidence." (Tr. 40.)  The ALJ also noted that the Huffmans had "a financial interest in the outcome of this case and a close relationship with the [plaintiff]."  *Id.*  Further, the ALJ indicated that plaintiff "did not present either of the above witnesses at hearing, preventing cross-examination of their allegations." *Id.*

In order for an ALJ to reject the testimony of a lay witness, he must present "reasons germane to each witness for doing so."  *Lewis v. Apfel*, 236, F.3d 503, 511 (9th Cir. 2001).  To the extent the ALJ invoked the Huffmans' close family relationship to discredit their testimony, the ALJ erred, as "[t]he fact that a lay witness is a family member cannot be a ground for rejecting his or her testimony." *Smolen v. Chater*, 80 F.3d 1273, 1288-89 (9th Cir. 1996).  Rather, the Ninth Circuit has explained that "testimony from lay witnesses who see the [plaintiff] everyday [sic] is of particular value . . . ."  *Id.*  Further, the Ninth Circuit has held that an abstract financial interest in a plaintiff's

Page 15 - OPINION AND ORDER

receipt of benefits is not in itself sufficient to reject lay witness testimony. *See Valentine v. Comm's Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009) (An ALJ may not rely solely on "characteristics common to all spouses" to discount a spouse's testimony.).  Nonetheless, a lay witness's close relationship to a plaintiff and possible pecuniary interest in a claim's outcome, when coupled with inconsistent medical evidence, have been found to be germane reasons. *See, e.g., Greger*, 464 F.3d at 972.  However, as the court's independent review of the third-party testimony does not establish inconsistency with the medical record, the amorphous possibility that the Huffman's testimony was tainted by their own financial interests is not germane.

Insofar as the ALJ disregarded the written testimony of Mr. Huffman because he did not testify during the hearing, the ALJ erred.  The record reflects that Mr. Huffman was available at the time of the hearing for cross-examination, however, due to time constraints, the ALJ indicated that any verbal testimony would have to be rescheduled for a future date.  (Tr. 88-90.)  When plaintiff's counsel offered to submit a written affidavit from Mr. Huffman in lieu of reconvening, the ALJ indicated a written submission would be sufficient.  (Tr. 89.)  Accordingly, that Mr. Huffman was not available for cross-examination directly contradicts the record and is not a valid reason to discredit his written testimony.  (Tr. 40.)

Defendant also argues that because plaintiff's parents noted many of the same symptom complaints and limitations that plaintiff did, they were not credible for the same reasons plaintiff was not credible. Def.'s Br. 18; *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2011).  However, as the ALJ's assessment of plaintiff's credibility was erroneous, it cannot be relied upon to also reject the lay witness testimony.  Mr. Huffman explained that throughout the years, although he took plaintiff with him on contracting jobs, plaintiff was "never able to complete a full days work." (Tr. 332.) He

Page 16 - OPINION AND ORDER

explained that plaintiff would not be likely to maintain employment because he "has to go to the bathroom all the time." *Id.* Mr. Huffman noted the Crohn's disease "affects [plaintiff] every day and has affected him for many years." (Tr. 331.) He characterized his son's existence as "living a life tethered to a bathroom." (Tr. 333.) These allegations are consistent with the symptoms described by plaintiff, and are not contradicted by the medical evidence. Similarly, although Mrs. Huffman indicated plaintiff could do a range of ADL's, the ADL's she described were essentially the same as those listed by plaintiff. Thus, for the same reason the ALJ's rejection of plaintiff's testimony was invalid insofar as it failed to account for plaintiff's many breaks while performing his ADL's, the ALJ's reasoning regarding the lay witness testimony also is invalid.

As such, the ALJ failed to provide valid germane reasons for disregarding their testimonial evidence. Further, because the reasons provided for rejecting plaintiff's testimony were not valid, the ALJ's error in rejecting third-party testimony under *Molina* is also invalid.

### III. Remand for Payment of Benefits

For the foregoing reasons, the ALJ erred in assessing the credibility of both plaintiff and his parents. Accordingly, remand is appropriate. The sole remaining issue is determining whether to remand for further proceedings or for payment of benefits. The decision to remand for further proceedings turns upon the likely utility of such proceedings. *Harman v. Apfel*, 211 F.3d 1172, 1179 (9th Cir. 2000). While the typical course is to remand for further proceedings, the Ninth Circuit has repeatedly credited evidence as true when the ALJ failed to provide clear and convincing reasons for discounting the testimony of a plaintiff. *See, e.g., Garrison*, 759 F.3d at 1022-23; *Orn*, 495 F.3d at 640; *Benecke v. Barnhart*, 379 F.3d 587, 594 (9th Cir. 2004). A court "should credit evidence that was rejected during the administrative process and remand for an immediate award of benefits" when

Page 17 - OPINION AND ORDER

the following conditions are met: "(1) the ALJ failed to provide legally sufficient reasons for rejecting the evidence; (2) there are not outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the [plaintiff] disabled were such evidence credited." *Benecke*, 379 F.3d at 593.

Here, plaintiff testified that his Crohn's disease requires that he make numerous trips to the bathroom each day. (Tr. 70.) His testimony was corroborated by the third-party evidence, and his treatment history includes numerous references to severe symptoms of Crohn's, particularly beginning in 2010. *See, e.g.*, (Tr. 66-70, 331-33, 416, 423, 468-80, 730-32.) Further, the ALJ found that plaintiff's Crohn's disease was a severe impairment that had more than a minimal effect on his ability to work. (Tr. 31); *See* Social Security Ruling ("SSR") 85-28, *available at* 1985 WL 56856, *3. Substantial evidence, when properly credited, establishes that plaintiff's Crohn's disease requires that he use the bathroom anywhere from five-to-fifteen times per day.

During the hearing, the VE indicated plaintiff could perform the sedentary jobs of document preparer, touch-up inspector, or food and beverage order clerk, based on his RFC. (Tr. 83-84.) When the VE was asked whether an employer in any of the listed occupations would tolerate at least one additional 15-minute break outside the normal break schedule, the VE indicated plaintiff could not take such a break every day and maintain employment. (Tr. 85.) The VE explained that "in some higher skilled jobs, there's a little bit more flexibility in the [break] scheduling. Unskilled jobs [require one] to stick with the schedule." *Id.* The ALJ then asked the VE if there was sedentary but skilled work that plaintiff could do that would allow him the flexibility to take unscheduled breaks, to which the VE replied that plaintiff did not have the requisite skills to qualify for a semi-skilled job, and was therefore precluded from such work. (Tr. 87-88.) Given the VE's responses, it is clear

Page 18 - OPINION AND ORDER

from the record that the ALJ would be required to find plaintiff disabled were plaintiff's testimony credited as true.    Accordingly, the Commissioner's decision is reversed and remanded for the immediate payment of benefits.

<em>Conclusion</em>

For the reasons stated above, the Commissioner's decision is REVERSED and this case is REMANDED for immediate payment of benefits.

IT IS SO ORDERED.

DATED this 25th of August 2015.

JOHN V. ACOSTA
United States Magistrate Judge