IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JERRY W. HUFFMAN,                                   Case No. 1:14-cv-00861-AC

                        Plaintiff,                          OPINION AND ORDER

vs.

CAROLYN W. COLVIN,
Commissioner of Social Security,

                        Defendant.

_____

ARTHUR W. STEVENS III
Black, Chapman, Webber & Stevens
221 Stewart Ave., Suite 209
Medford, OR 97501
        Attorney for plaintiff

BILLY WILLIAMS
Interim United States Attorney
District of Oregon
RONALD K. SILVER
Assistant United States Attorney
1000 SW Third Ave., Suite 600
Portland, OR 97201-2902


1 - OPINION AND ORDER

LISA GOLDOFTAS
Special Assistant United States Attorney
Office of the General Counsel
Social Security Administration
701 Fifth Ave., Suite 2900 M/S 221A
Seattle, WA 98104-7075
      Attorneys for defendant

ACOSTA, Magistrate Judge:

      Jerry Huffman ("plaintiff") sought judicial review of a final decision by the Commissioner of Social Security ("Commissioner") denying his application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("Act"). This Court had jurisdiction to review the Commissioner's decision pursuant to 42 U.S.C. § 405(g). After reviewing the record, the Court issued a judgment ordering reversal of the Commissioner's decision, and remanded for immediate payment of benefits. Thereafter, the Commissioner filed a motion to alter or amend the judgement, alleging clear error. After careful review of the Commissioner's motion and reconsideration of the administrative record, the Commissioner's motion is denied.

*Procedural Background*

      Plaintiff applied for SSI on February 19, 2010, alleging disability as of August 1, 1990, due to Crohn's disease and depression. (Tr. 225, 239, 245.) His application was denied initially and upon reconsideration. (Tr. 158-161, 165-67.) A hearing was held on January 26, 2012, before an Administrative Law Judge ("ALJ"). (Tr. 51-90.) On February 24, 2012, the ALJ issued a decision finding plaintiff not disabled. (Tr. 29-43.) Plaintiff timely requested review of the ALJ's decision and, after the Appeals Council denied review, plaintiff filed a complaint in this Court. (Tr. 1-6.) After careful consideration of the record, the Court issued an Opinion and Order on August 25, 2015, remanding the case for immediate payment of benefits. (ECF No. 22.) Pursuant to Fed. R. Civ. P.

59(e) ("Rule 59(e)"), the Commissioner now moves to alter or amend the August 25, 2015 Order

("O&O"), alleging clear legal error by the Court. Def.'s Mot. to Alter or Amend Judgment ("Def.'s

Mot.").

*Factual Background*

As stated in the previous Opinion, plaintiff, born August 25, 1970, was 19 years old on the

alleged onset date of disability and 41 years old at the time of the hearing. (Tr. 29, 225.) He

attended school until the tenth grade and did not obtain a GED. (Tr. 246.) Plaintiff previously

worked in construction. (Tr. 246-47.)

*Fed. R. Civ. P. 59(e) Standard of Review*

Fed. R. Civ. P. 59(e) allows a court to alter or amend its judgment in the three following

circumstances: "(1) the district court is presented with newly discovered evidence, (2) the district

court committed clear error or made an initial decision that was manifestly unjust, or (3) there is an

intervening change in controlling law." *Duarte v. Bardales*, 526 F.3d 563, 567 (9th Cir. 2008)

(quoting *Zimmerman v. City of Oakland*, 255 F.3d 734, 740 (9th Cir. 1994)). "A motion for

reconsideration under Rule 59(e) should not be granted, absent highly unusual circumstances, unless

the district court is presented with newly discovered evidence, committed *clear error*, or if there is

an intervening change in the controlling law." *McDowell v. Calderon*, 197 F.3d 1253, 1255 (9th Cir.

1999) (emphasis in the original) (citations and internal quotation marks omitted). In reviewing the

Commissioner's motion, the Court does not review de novo the legal basis of the August 25, 2015

Order, but rather reviews only for clear error. *Id.*

*Social Security Administration Standard of Review*

The court must affirm the Commissioner's decision if it is based on proper legal standards

Page 3 - OPINION AND ORDER

and the findings are supported by substantial evidence in the record. *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation and internal quotations omitted). The court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusions." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). "Where the evidence as a whole can support either a grant or a denial, [a court] may not substitute [its] judgment for the ALJ's." *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007) (citation omitted).

The initial burden of proof rests upon the claimant to establish disability. *Howard v. Heckler*, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, the claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner has established a five-step sequential process for determining whether a person is disabled. *Bowen v. Yuckert*, 42 U.S. 137, 140 (1987); 20 C.F.R. § 404.1520. First, the Commissioner determines whether a claimant is engaged in "substantial gainful activity;" if so, the claimant is not disabled. *Yuckert*, 482 U.S. at 140; 20 C.F.R. § 404.1520(b).

At step two, the Commissioner resolves whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140-41; 20 C.F.R. § 404.1520(c). If not, the claimant is not disabled. *Yuckert*, 482 U.S. at 141.

At step three, the Commissioner evaluates whether the claimant's impairment meets or equals "one of a number of listed impairments that the Secretary acknowledges are so severe as to

Page 4 - OPINION AND ORDER

preclude substantial gainful activity." *Id.*; 20 C.F.R. § 404.1520(d). If so, the claimant is presumed disabled; if not, the Commissioner proceeds to step four. *Yuckert*, 482 U.S. at 141.

At step four, the Commissioner determines whether the claimant still can perform "past relevant work." *Yuckert*, 482 U.S. at 141; 20 C.F.R. § 404.1520(f). If the claimant can work, she is not disabled; if she cannot perform past relevant work, the burden shifts to the Commissioner. *Yuckert*, 482 U.S. at 141.

At step five, the Commissioner must establish that the claimant can perform other work existing in significant numbers in the national or local economy. *Id.* at 142; 20 C.F.R. § 404.1520(g). If the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R. § 404.1566.

### The ALJ's Findings

At step one of the five-step sequential evaluation process, the ALJ found plaintiff had not engaged in substantial gainful activity since February 9, 2010, the application date. (Tr. 31.) At step two, the ALJ found plaintiff had the following severe impairments: "Crohn's disease, history of torn medial and lateral meniscus in the . . . left knee and grade I degenerative arthritis in the . . . right knee, and adjustment disorder with mixed depression and anxiety." *Id.* At step three, the ALJ found plaintiff's impairments did not meet or equal the requirements of a listed impairment. (Tr. 33.)

Accordingly, the ALJ continued the sequential evaluation process to determine how plaintiff's medical limitations affected his ability to work. The ALJ resolved that plaintiff had the residual functional capacity ("RFC") to: "lift and carry 50 pounds occasionally and 25 pounds frequently, and stand and walk for two hours in an eight-hour workday . . . occasionally engage in postural activities . . . cannot climb ladders, ropes, or scaffolds . . . must not be exposed to heights

Page 5 - OPINION AND ORDER

or hazards . . . [and] would be limited to performing simple to moderately complex work." (Tr. 35.)

At step four, the ALJ concluded that plaintiff was unable to perform any past relevant work. (Tr. 40.) At step five, the ALJ concluded that plaintiff had the RFC to perform the following representative occupations: document preparer, film touch-up inspector, and food and beverage order clerk. (Tr. 42.) Therefore, the ALJ determined plaintiff was not disabled within the meaning of the Act. (Tr. 43.)

### The Court's Findings

The Court carefully reviewed the record and identified several errors of law in the ALJ's decision. With regard to plaintiff's credibility, the Court found the ALJ failed to sufficiently evaluate whether plaintiff's testimony was inconsistent with the assessments of his physicians (O&O at 6); his alleged drug use and drug-seeking behavior (*id.* at 6-10); whether, based on the record as a whole, plaintiff's conservative treatment indicated he was not credible (*id.* at 10-12); whether plaintiff's work history and non-reported income was probative (*id.* at 12-13); his activities of daily living ("ADLs") (*id.* at 13-14); and whether plaintiff's subjective complaints were supported by objective findings (*id.* at 14-15). The Court further found the ALJ failed to provide legally sufficient reasons to reject the lay witness opinion evidence provided by plaintiff's parents (*id.* at 15-17). The Court determined the ALJ's errors were not harmless, and therefore required remand. (*Id.* at 17.) Finally, determining the record was complete, and based on the testimony of the VE, the Court concluded further proceedings would serve no useful purpose. (*Id.* at 17-19.) Therefore, the Court remanded the case for immediate payment of benefits. (*Id.* at 19.)

//

//

Page 6 - OPINION AND ORDER

*Discussion*

I.  Credibility Finding

The Commissioner contends the Court misapplied the law in finding the ALJ's rationales for discrediting plaintiff's subjective testimony legally insufficient.  Def.'s Mot. 3.  As a threshold matter, the Commissioner argues, "[e]ven if the ALJ failed to provide clear and convincing reasons to support his credibility findings," argues the Commissioner, "the reasons were nevertheless consistent with the 'extremely deferential' substantial evidence standard . . . ."  *Id.* (citations omitted).  As the Commissioner concedes, this Court is bound by Ninth Circuit precedent, which abides the well-established clear-and-convincing standard of review for evaluating plaintiff credibility in Social Security Administration ("SSA") cases.  *See, e.g.*, *Lester v. Chater*, 81, F.3d 821, 834 (9th Cir. 1995); *Garrison v. Colvin*, 759 F.3d 955, 1015 (9th Cir. 2014).  The clear-and-convincing standard establishes a very high evidentiary bar.  *See Garrison*, 759 F.3d at 1015.  Furthermore, an ALJ's findings may be set aside by the court when the decision is not supported by substantial evidence *or* when the improper legal standard is applied.  *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012).  In any event, as the Commissioner contends the ALJ's reasoning passed muster under the more rigorous clear-and-convincing standard, the Court declines to opine on the development and legitimacy of the Ninth Circuit's well-established adjudicative framework at this time.

A. *Activities of Daily Living*

The Commissioner argues the Court erroneously evaluated the ALJ's findings regarding plaintiff's activities of daily living ("ADLs").  Def.'s Mot. 4-6.  In his decision, the ALJ found

plaintiff was not credible because his activities were "not consistent with the alleged degree of impairment." (Tr. 40.) The Commissioner argues this rationale has been recognized as clear-and-convincing, and is therefore valid. Def.'s Mot. 4. However, the Commissioner omits a key portion of the legal standard, because the rationales must to be both clear and convincing, and made with specificity. *See, e.g., Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) ("The ALJ must make 'specific findings relating to the daily activities' and their transferability to conclude that a claimant's daily activities warrant an adverse credibility determination.") (quoting *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) (internal brackets omitted)). The ALJ continued, "[plaintiff's ADLs] tend to show. . . the ability to perform work." *Id.* As noted in the Opinion, the ALJ then listed a number of basic household and personal tasks plaintiff retained the ability to perform. *Id.*; (O&O at 13). However, the Court properly determined the low-level tasks noted by the ALJ did not support the assertion they "tended to show" the ability to "perform work," because a long line of cases hold such activities do not necessarily transfer to the workplace. *Id.*; *see Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989).

The Commissioner further asserts the Court failed to properly evaluate the ALJ's finding because plaintiff testified he performed work building a deck. Def.'s Mot. 4-5. In support of the finding that plaintiff's physical and mental abilities were greater than alleged, the ALJ found, "as recently as May 2009, the claimant apparently engaged in building a deck, according to treatment notes." (Tr. 40.) The Court, evaluating whether this rationale was clear and convincing, determined that although plaintiff "may have been able to perform the ADLs he testified to [including the deck work], the ALJ did not establish that [plaintiff] was able to perform them without taking many

breaks." (O&O at 14.) Thus, the Court identified how the ALJ's rationale was contrary to established case law, as the mere ability to perform some work activities does not necessarily translate to the ability to perform such activities in a competitive workplace environment. *Fair*, 885 F.2d at 603.

At the hearing, plaintiff testified to his ability to perform some work, stating he was able to work for his father on occasion because his father was not docking him for taking excessive restroom breaks. (Tr. 69); (O&O at 14). Thus, the Court concluded, "the mere fact that plaintiff was able to build a deck in an undefined amount of time and while taking an undefined number of breaks does not establish that his symptoms were not severe." *Id.* This conclusion was directly in response to the ALJ's erroneous finding that plaintiff's ability to perform the ADLs in question was not necessarily inconsistent with his allegations of requiring numerous unscheduled breaks throughout the day due to his Crohn's disease symptoms.

The Commissioner asserts the court's the conclusion "is clearly erroneous because it assumes [plaintiff] alleged only that he required frequent bathroom breaks . . . [however] he alleged a host of debilitating limitations." Def.'s Mot. 4. Presumably, the Commissioner is suggesting the Court's conclusion was incomplete because the ALJ noted other circumstances wherein plaintiff's symptom allegations were belied by his ADLs. However, the allegation is erroneous because the Court did not overlook plaintiff's testimony that he was regularly fatigued and in pain; limited to standing, walking, and sitting for only 30 minutes at a time; and claimed to need to nap at least half the day." Def.'s Mot. 4. To the contrary, the Court recognized plaintiff admitted he was able to perform a range of ADLs, albeit with numerous breaks. (O&O at 13-14.) In short, whereas the ALJ was

required to provide clear and convincing contradictions in plaintiff's testimony or that the ADLs met a threshold for transferable work skills, the ALJ showed neither. Instead, the ALJ simply assumed plaintiff was not in constant pain and fatigue, did not require excessive breaks, and was able to stand, walk, and sit longer than plaintiff alleged because he was involved in constructing a deck over an undefined period of time. (O&O at 14.) The ALJ's findings did not meet the appropriate legal standard.

To the extent the Commissioner argues plaintiff's allegation that he "needed to nap at least half the day" precludes the ability to work[] all day and into the night building a deck," the argument lacks merit. *See* Def.'s Mot at 4-5. The Commissioner misstates the evidence: the provider who made the chart note in question, FNP Fogg, noted plaintiff was "working all day and late into the night, trying to keep himself busy to keep his mind off his impending divorce." (Tr. 394.) The passage does not specify what type of work plaintiff was doing. *Id.* In a later passage of the same chart note, FNP Fogg reported plaintiff was currently building a deck, but the record does not show that plaintiff was "building a deck all day and into the night" as the Commissioner asserts. *See id.* Further, the chart note presents no indication how long plaintiff spent building the deck, or whether plaintiff took breaks consistent with his alleged limitations. *Id.* Critically, the ALJ did not indicate plaintiff was building a deck all day and into the night, nor did the ALJ identify any activity involved in deck building that was inconsistent with plaintiff's alleged limitations. *See* (tr. 40). The ALJ's reasoning fails because it is not specific and does not establish clear and convincing support for the proposition that plaintiff's allegations are contradicted. *See Burrell v. Colvin*, 775 F.3d 133, 1139 (9th Cir. 2014) ("Our decision make clear the we may not take a general finding . . . and comb the

administrative record to find specific conflicts . . . [g]eneral findings are insufficient[.]") (citation and internal quotation marks omitted). As the ALJ's rationales were legally deficient, the Court did not err in rejecting them.

The Commissioner next argues the ALJ is entitled to draw reasonable inferences from the record, and further, that where an ALJ makes a reasonable interpretation of the evidence, a Court may not displace that interpretation, even if other contrary interpretations are available. Def.'s Mot. 5; *see Burch v. Barnhart*, 400 F.3d 676, 680-81 (9th Cir. 2005). Again, the Commissioner's argument omits a key component of the review process: even if the ALJ's interpretation is reasonable, it still must meet the clear-and-convincing standard in order to discredit subjective symptom testimony. *See, e.g.*, *Smolen*, 80 F.3d at 1281. If the Commissioner's selective recitation of the legal standard were accurate, the clear-and-convincing requirement for evaluating subjective testimony would essentially be replaced by a "rational basis" standard. Similarly, the Commissioner's contention that "a reasonable person could . . . conclude this activity was inconsistent with the postural restrictions [plaintiff] endorse," requires evidence that plaintiff's work required that he was not as posturally limited as alleged. However, rather than provide the legally required specifics, the ALJ simply offered a "reasonable" interpretation. Thus, as explained in the Order, the ALJ's finding did not reach the clear-and-convincing nor specific-and-legitimate legal standard.

While the Commissioner asserts clear/manifest error in the Court's evaluation of the ALJ's ADL findings, the Commissioner's arguments are substantially the same as those proffered in the Commissioner's original brief. To the extent the Commissioner presents new arguments in support

of the instant motion, those arguments (such as deck building being inconsistent with plaintiff's

needing to nap half the day, postural limitations, and limitations in concentration and memory) were

not invoked by the ALJ in his decision. *See* (tr. 40). Rather, the ALJ made the general statement,

"claimant's activities suggest that he has a better physical and mental capacity than he has stated[.]"

(Tr. 40.) This Court cannot affirm the Commissioner's decision on grounds the ALJ did not invoke.

*Pinto v. Massanari*, 249 F.3d 84-, 847 (9th Cir. 2007). As explained in the Order, the vague

rationale provided by the ALJ is legally deficient. (O&O at 13-14.) Accordingly, the Court is not

persuaded the Order included any manifest error of law or fact on this issue.

   *B. Alleged Inconsistencies Between Medical Evidence and Plaintiff Testimony*

   The Commissioner argues the Court "misread the Commissioner's brief and overlooked

inconsistences between the medical evidence and [plaintiff's] allegations." Def.'s Mot. 6. As stated

above, the Court has limited purview in an SSA case such that it may only review the findings and

reasoning asserted by the ALJ, and further, that the Court may not affirm an advserse decision on

grounds the ALJ did not invoke. *See Burrell*, 775 F.3d at 1138. Moreover, although lack of

objective evidence is one reason to discredit the testimony of a claimant, it cannot be the sole reason

to discredit the claimant. *Rollins v. Massanari*, 261 F.3d 853, 855 (9th Cir. 2001); (O&O at 14-15).

   The Commissioner first argues the ALJ "reviewed" evidence regarding plaintiff's allegations

of "fatigue, memory, standing, walking, concentration, and memory." Def.'s Br. 6. The

Commissioner next asserts "the record revealed" the absence of such findings, which presumably

suffices to show contradiction in the record. *Id.* However, it is the duty of the ALJ, not the

Commissioner on review, to develop the record and note (with specificity and in a clear-and-

convincing manner) contradictions which impugn a claimant's credibility. *See Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995). The Commissioner's post-hoc analysis is inapposite.

The Commissioner further contends the Court failed to account for a "consultative examination [which] squarely contradicted the cognitive limitations" plaintiff described. Def.'s Mot. 6. Once again, the ALJ did not cite the Commissioner's example in discrediting plaintiff; rather, the ALJ merely noted, "no physician or psychologist supports claimant's allegations . . . [all of the] physicians provided assessments in no way consistent with the claimant's account." (Tr. 39.) Such generalized findings fall far short of the clear-and-convincing threshold. *See Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints) (citation omitted). The Ninth Circuit requires that an ALJ's reasoning be "sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain." *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991). While the Commissioner argues the ALJ "easily meets this standard," the Court explained that to the extent *any* of the physicians provided assessments consistent *in any way* with plaintiff's allegations, the ALJ's finding is inaccurate, at best. *See* Def.'s Br. 7; (O&O at 6). Indeed, the physicians of record substantiated many of plaintiff's allegations, many of which the ALJ used to determine, in part, plaintiff's severe impairments at step two. (O&O at 6.) Accordingly, the Court did not err in finding the ALJ's generalized findings did not meet the appropriate legal threshold.

*C. Drug-Seeking Behavior*

The Commissioner next contends the Court erred by finding the ALJ's reasons for

discrediting plaintiff based on alleged drug-seeking were insufficient, and then erred again by failing to consider other evidence of alleged drug-seeking behavior the ALJ did not invoke. Def.'s Mot. 9.

The Commissioner asserts that drug-seeking behavior is a proper basis for finding a claimant not credible, citing *Edlund v. Massanari*, 253 F.3d 1152, 1157 (9th Cir. 2001). The Court distinguished *Edlund* in its Order. (O&O at 8.) The *Edlund* court did not establish that *any* drug-seeking behavior establishes that a plaintiff is *per se* not credible. Rather, as set forth in the Order, the ALJ in *Edlund* permissibly found the plaintiff not credible because he had allegedly exaggerated symptoms in order to procure pain medication. *Id.*; (O&O at 8). Here, the ALJ did not indicate he was impugning plaintiff's testimony because plaintiff was exaggerating pain symptoms; indeed, the ALJ noted plaintiff "requested pain medication to allow him to engage in long-haul truck driving, with an apparent medical justification." (Tr. 39.) However, as explained in the Order, the ALJ misstated the record because plaintiff was not doing long haul truck driving at the time. (Tr. 60, 387); (O&O at 9-10). Moreover, plaintiff's primary care provider, FNP Fogg, prescribed pain medication in response to plaintiff's request, which implies Fogg did not question plaintiff's credibility. The ALJ also invoked an incident which occurred two years later, wherein plaintiff "exhibited possible drug-seeking behavior[.]" (Tr. 39.) However, in that instance, Fogg again appeared to lend plaintiff's allegations credence, as he once more prescribed additional pain medication. (Tr. 382.) Accordingly, the Court properly found the ALJ's rationale was not clear and convincing.

The Commissioner further contends the Court erred by declining to consider other evidence of alleged drug-seeking which the ALJ did not invoke in his decision. Specifically, the Commissioner argues the court inappropriately applied *Connett v. Barnhart*, 340 F.3d 871 (9th Cir.

2003), in declining to addressing rationales for discrediting plaintiff proffered by the Commissioner which were not raised by the ALJ. Def.'s Mot. 9-12; *see* (O&O at 8-9). In *Connett*, the Ninth Circuit stated, ". . . we cannot rely on independent findings of the district court. We are constrained to review the reasons the ALJ asserts . . . [i]t was error for the district court to affirm the ALJ's credibility decision based on evidence that the ALJ did not discuss." *Connett*, 340 F.3d at 874. In support, the *Connett* court cited *Chenery*, which explained:

> [A] reviewing court, in dealing with a determination of a judgment which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency. *If those grounds are inadequate or improper, the court is powerless to affirm the administrative action by substituting what it considers to be a more adequate or proper basis* . . . It will not do for a court to be compelled to guess at the theory underlying the agency's action nor can a court be expected to chisel that which must be precise from what the agency has left vague and indecisive.

*Chenery*, 332 U.S. at 196-97 (emphasis added).[1] *Connett* also cited *Pinto*, in which the court drew a distinction between the treatment of evidence in affirming administrative agency decisions versus district court judgments: "although we can affirm the judgment of a district court on any ground supported *by the record* . . . we cannot affirm the decision of an agency on a ground that the agency did not invoke in making its decision." *Pinto*, 249 F.3d at 847 (citing *Downs v. Hoyt*, 232 F.3d 1031, 1036 (9th Cir. 2000) and *Chenery*, 332 U.S. at 196).

Here, the Commissioner argues that although a court cannot affirm an ALJ's decision on *grounds* he did not invoke, the court must still affirm the ALJ's decision if the ALJ has invoked *grounds* to discredit a claimant regardless of whether the ALJ invoked specific *evidence*. Def.'s Br.

---

[1] The Commissioner cites an earlier case, *SEC v. Chenery*, 318 U.S. 80 (1943), rather than the later case cited by *Connett*.

10. Thus, argues the Commissioner, although the ALJ failed to identify a particular quantum of evidence in support of the finding that plaintiff was drug-seeking, the court must nonetheless affirm the ALJ's finding based on evidence proffered for the first time by the Commissioner, presumably because the *grounds* for the evidence were previously established by the ALJ. *Id.*

The court is not persuaded by the Commissioner's argument. First, the Commissioner has not shown the court's interpretation of the precedent established by *Connett* and *Pinto* is clearly erroneous. The Commissioner asserts, "[i]n this case, unlike the SEC in *Chenery*, the Commissioner did not ask the court to consider an entirely new basis for upholding the ALJ's decision." Def.'s Mot. 10. However, in the original *Chenery* case, the Supreme Court determined that, in the context of determining whether the Commissioner of the SEC's decision to apply the rules of a court of equity, an "action cannot be upheld merely because findings might have been made and consideration disclosed which would justify its order . . . [t]here must be such a responsible finding." *Chenery [I]*, 318 U.S. at 94. Thus, the case does not stand for the proposition that a reviewing court may affirm an administrative agency's decision based on evidence not cited by the agency so long as the evidence is not "an entirely new basis." Contrary to the Commissioner's contention, the case does not draw distinctions between "grounds," "bases," "findings," or "evidence." Rather, the case merely stands for the general proposition that, to affirm an agency decision, the agency must justify its actions by establishing sufficient bases that are "clearly disclosed and adequately sustained." *Id.* Further, the Supreme Court noted the need for specificity in establishing such grounds, which lends support to this Court's Order: "The Commissioner's determination can stand, therefore, only if it found that the *specific* transactions under scrutiny showed misuse." *Id.* As noted above, when *Chenery* returned to the Supreme Court four years later, the same principles were reiterated. *See*

Page 16 - OPINION AND ORDER

*Chenery [II]*, 332 U.S. at 196.   Although the Supreme Court ultimately upheld the SEC Commissioner's decision in the second instance on a different basis, that occurred only after the case had been remanded for additional proceedings. *Id.* at 200.

      The Commissioner further contends the grounds/evidence "dichotomy" is supported by the Ninth Circuit's decision in *Warre ex rel. E.T. IV v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1005 n.3 (9th Cir. 2006).   In *Warre*, the court allowed the Commissioner to rely on the Program Operations Manual System ("POMS") in evaluating whether a child plaintiff met one of two listings, although the ALJ did not cite the POMS in his original decision. *Id.* at 1005.  POMS is an internal SSA document which has been held to be a "persuasive authority." *Id.*, (citing *Hermes v. Sec'y of Health and Human Servs.*, 926 F.2d 789, 791 n.1 (9th Cir. 1991)).   More recently, the Ninth Circuit has explained, "POMS may be entitled to respect . . . to the extent it provides a persuasive interpretation of an ambiguous regulation, but it does not impose judicially enforceable duties on either this court or the ALJ." *Kennedy v. Colvin*, 738 F.3d 1172, 1177 (9th Cir. 2013) (citations and internal quotation marks omitted).   The Commissioner argues that by condoning post-decision reliance on the POMS, *Warre* stands for the proposition that, "[w]hile it is a post-hoc rationalization to invent a new *reason* the ALJ never considered; it is not a post-hoc rationalization to consider additional *evidence* supporting the reason that were offered." Def.'s Br. 10 (emphasis in original).

      The court disagrees with the Commissioner's premise. The POMS is not additional evidence in an SSA case any more than an SSA statute or a Social Security Ruling ("SSR") is evidence. *See* § 404.1512(b).  Rather, as articulated above, the POMS is guidance which may be used to assist an adjudicator in interpreting an ambiguous regulation. *Kennedy*, 738 F.3d at 1177.  The POMS is not part of the administrative record, and as such, does not represent substantial evidence. Contrary to

the Commissioner's assertion, nothing in *Warre* suggests the POMS is additional "evidence." *See Warre*, 439 F.3d at 1005 n.3 ("the POMS simply is additional support of for the Commissioner and the ALJ's position"). Thus, to the extent the Commissioner argues the POMS was additional evidence in the *Warre* decision, the argument lacks merit.

Finally, the Commissioner argues the court clearly erred by not reviewing "post-decision evidence" that the ALJ did not cite, based on *Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157 (9th Cir. 2012). This argument also lacks merit. In *Brewes*, the Ninth Circuit determined that when new evidence is submitted to the Appeals Council following the ALJ hearing, the new evidence becomes part of the administrative record, and therefore must be considered by a reviewing court. *Id.* at 1163. As discussed, the evidence at issue here was not "new" evidence in the same way the evidence in *Brewes* was new – here, the evidence was part of the administrative record at the time the ALJ drafted his decision. As such, *Brewes* is inapposite. To the extent the Commissioner argues *Brewes* dictates the court "consider all of the facts in the administrative record in determining if the ALJ's decision is supported by substantial evidence," the argument also fails. If the Commissioner's argument were valid, the well-established rule that Ninth Circuit courts may not affirm an adverse decision on grounds not invoked by an ALJ would be rendered toothless. Nothing in *Brewes*, nor any other case the court is aware of, suggests the Ninth Circuit intended such an outcome.

Indeed, the Ninth Circuit has repeatedly held that courts may not affirm an adverse decision based on evidence not invoked by the ALJ. For example, the Ninth Circuit recently held that even when an ALJ has provided a general basis to discredit a claimant, such as inconsistencies between testimony and daily activities, the Court cannot affirm an adverse decision based upon specific inconsistences raised by the Commissioner post hoc. *Burrell*, 775 F.3d 1133, 1138 (9th Cir. 2015).

"Our decisions make clear that we may not take a general finding – an unspecified conflict between Claimant's testimony about daily activities and her reports to doctors – and comb the administrative record to find specific conflicts." *Id.* Despite this precedent, the Commissioner once again asserts the Court clearly erred in the instant case by declining to comb through the record in search of specific evidence the ALJ failed to assert. Def.'s Br. 10. As mentioned above, court was "constrained to review the reasons the ALJ assert[ed]," and therefore the court did not commit clear error. *Connett*, 340 F.3d at 874; *see also Garrison*, at 759 F.3d at 1010.

   *D.   Conservative/Effective Treatment Issue*

   Finally, the Commissioner argues the court erred by finding the ALJ failed to provide clear and convincing rationales for impugning plaintiff's credibility regarding conservative and/or effective treatment. (O&O at 10-12.) The Commissioner asserts the Court erred because " although there was evidence that 'could be interpreted as indicating symptoms were in remission in the past, there are no specific findings indicating as much in the record.'" Def.'s Mot. 13 (quoting O&O at 10). Noting the court is constrained to uphold findings that are susceptible to more than one rational interpretation, the Commissioner contends the court's findings are therefore "clearly erroneous." Def.'s Mot. 13 (citation omitted). However, the Commissioner misinterprets the court's statement by taking the quoted passage out of context. The court explained that treating physician Dr. Al-Khoudari's statement, "[i]t seems like his medications have been holding him in remission for a long time," *could be* interpreted as meaning he had actually been in remission at some unspecified point in the past, but such an interpretation *would be* erroneous because the statement was contradicted by the record. (O&O 10-11), *see* (tr. 472). As such, the ALJ's interpretation was not supported by substantial evidence in the record, and therefore was legally insufficient.

Furthermore, the ALJ's particular finding was different than Dr. Al-Khoudari's. *Compare* (tr. 39) *to* (tr. 472). The ALJ impugned plaintiff's credibility because "two separate treating sources acknowledged the stable condition of claimant's Crohn's disease." Tr. 39. The Opinion explained why the ALJ's finding was erroneous by citing instances of plaintiff's Crohn's treatment before and after the visit to Dr. Al-Khoudari. (O&O at 11.) Moreover, plaintiff treated with Dr. Al-Khoudari only one time, and therefore the doctor did not have a longitudinal picture of plaintiff's conditions. The Order reasoned that, in contrast to Dr. Al-Khoudari, plaintiff's primary care provider, FNP Fogg, did not give any indication plaintiff's Crohn's was ever in remission. *Id.* As such. Despite numerous instances of Crohn's disease treatment over many years, the ALJ extricated two instances where a doctor mentioned the possibility of Corhn's remission, and then drew the conclusion that "two separate treating sources acknowledged the stable condition of the claimant's Crohn's disease." (Tr. 39.) As the Opinion explained, "[a]n ALJ may not selectively consider evidence to support the conclusion that a plaintiff is not disabled; rather, the ALJ must consider the evidence as a whole in arriving at a conclusion based on substantial evidence." *Id.* (quoting *Holohan v. Massanari*, 246 F.3d 1195, 1207 (9th Cir. 2001). Moreover, although Dr. Al-Khoudari mentioned the possibility of past remission, plaintiff was seeking treatment that day for an exacerbation of Crohn's disease. (Tr. 472). As such, the ALJ's finding that plaintiff's condition was "stable" based on Dr. Al-Khoudari's chart note was not reasonable. Therefore, the ALJ's reasoning failed to meet the appropriate legal threshold, and the Order appropriately assigned error. (O&O at 11.)

More than a year after treating with Dr. Al-Khoudari, plaintiff presented to Dr. Haulk with a chief complaint of "Crohn's," reporting needing to use the restroom 5-7 times per day. (Tr. 732.) The doctor reported plaintiff's condition was "relatively stable on current rx." *Id.* At first blush, it

appears reasonable for the ALJ to find plaintiff's Crohn's condition was stable based on Dr. Haulk's

report. However, as explained in the Order, even if plaintiff's condition was stable, it is undisputed

the condition nonetheless required 5-7 unscheduled restroom breaks throughout the day, as Dr.

Haulk reported.[2] (O&O at 11-12.) Thus, even if plaintiff's condition had stabilized to that particular

level of severity, the ALJ neglected to evaluate whether plaintiff's "stable" level of impairment

allows him to perform substantial gainful activity.  *See* (tr. 39); (O&O at 12).  While the

Commissioner characterizes this particular issue as the court merely interpreting the term "stable"

differently than the ALJ, the Commissioner fails to address the thrust of the Order's analysis:

regardless of the ALJ's interpretation of the term "stable," the ALJ's failure to assess whether the

symptoms noted by Dr. Haulk allowed plaintiff to perform substantial gainful activity under the Act

was reversible error.

     Additionally, as discussion of Dr. Haulk's report was couched in the ALJ's credibility

analysis, the ALJ was required to provide specific, clear and convincing reasons to discredit the

testimony. However, the ALJ erroneously failed to specify how Dr. Haulk's report that plaintiff used

the restroom 5-7 times per day was inconsistent with plaintiff's testimony.  *Treichler v. Comm'r of*

*Soc. Sec. Admin.*, 775 F.3d 1090, 1103 (9th Cir. 2014) (ALJ must identify the testimony that was not

credible and specify what evidence undermines the plaintiff's complaints) (citation omitted).

     For all of the foregoing reasons, the court's Order did not err in finding the ALJ's evaluation

---

[2] The court notes that at the time of the hearing, plaintiff indicated that although his condition was stabilized, he was nevertheless required to use the restroom 10-15 times per day. (O&O at 15); (tr. 70).  As noted in the hearing, the ALJ did not make any finding or identify any evidence suggesting plaintiff's allegations about the frequency and duration of his multiple daily trips to the bathroom were not credible.  (O&O at 15 n.2.)

Page 21 - OPINION AND ORDER

of plaintiff's credibility legally deficient.

II. Lay Witness Testimony

The Commissioner further assigns clear error to the court's analysis of the lay witness testimony of plaintiff's mother and father. Def.'s Mot. 15; *see* O&O at 15-17. The Commissioner argues, "[t]he valid credibility factors discussed above were also germane to the lay witness, who gave testimony similar to the claimant's." *Id.* For the reasons set forth above, the court did not err in its evaluation of the ALJ's credibility analysis. Therefore, the Commissioner's basis for assigning of clear error regarding lay witness testimony is invalid.

For the reasons set forth in the Order, the ALJ failed to provide legally sufficient reasons, germane to the lay witnesses, for discounting their testimony. (O&O at 16-17.)

III. Remand for Benefits

Finally, the Commissioner assigns clear error to the court's remand of the case for immediate payment of benefits. Def.'s Mot.15-18. A reviewing court has discretion to remand a case for benefits when the following conditions are met: "(1) the ALJ failed to provide legally sufficient reasons for rejecting the evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find [plaintiff] disabled were such evidence credited." *Benecke v. Barnhart*, 379 F.3d 587, 594 (9th Cir. 2004). The Commissioner contends the court's application of the doctrine was erroneous: "[w]hile the Opinion identifies the correct analytical steps . . . it misinterpreted what is required to conclude the record is fully developed . . . ." Def.'s Mot. 16.

Essentially, the Commissioner contends the court erred in determining the record was fully developed before proceeding to credit plaintiff's erroneously discredited testimony. Def.'s Mot. 16-

17.  Although the court concedes the Opinion did not include an explicit analysis of outstanding issues that must be resolved before a disability determination could be made, the reason for the omission is somewhat self-evident: there were no outstanding issues necessitating further proceedings.  The Opinion touched on this point in noting the medical record included numerous references to ongoing severe symptoms of Crohn's disease, which required plaintiff to visit the restroom numerous times per day.  (O&O at 18.)  This evidence was corroborated by lay witness testimony that plaintiff needed to take numerous unscheduled breaks each day.  Furthermore, the medical record and lay witness testimony was consistent with claimant's own testimony that he required 5-15 unscheduled breaks throughout the day – even when his condition was "stable" – due to Crohn's symptoms.  *Id.*  As such, no outstanding issues remained, and the court proceeded on the assumption that plaintiff's erroneously discredited testimony was true.  *Garrison*, 759 F.3d at 1022. As explained in the Order, when the VE addressed whether plaintiff could maintain employment based on the breaks necessitated by his Crohn's symptoms, the VE unequivocally answered he could not.  (O&O at 18-19); (tr. 85, 78-88).  Accordingly, the court exercised its discretion and remanded for immediate calculation and payment of benefits.  (O&O at 18-19.)  The court did not "assume [plaintiff] is credible and his allegations are true merely because the ALJ committed adjudicatory errors," as the Commissioner contends.  Def.'s Mot. 18.

The Commissioner requests the court "conform its legal analysis" to that of *Treichler* and *Brown-Hunter v. Colvin*, — F.3d —, 2015 WL 4620123,[3] by identifying conflicting evidence in the

---

[3] *Brown-Hunter* was amended and superseded on denial of rehearing.  The superseding opinion, which the court shall reference, is *Brown-Hunter v. Colvin*, 806 F.3d 487 (9th Cir. 2015).

record requiring further proceedings on remand. Def.'s Mot. 18. For the following reasons, "conforming" the legal analysis of the Order to the aforementioned cases does not alter the result.

In *Treichler*, the court found the ALJ failed to provide legally sufficient reasons for rejecting the plaintiff's testimony, which required remand. *Treichler*, 775 F.3d at 1103. The court next determined there were "significant factual conflicts in the record" between the plaintiff's testimony and the medical record. *Id.* at 1104. The court noted three inconsistencies which required resolution through further proceedings: (1) while the plaintiff testified he regularly had incontinence during the day, the medical record consistently noted strictly nighttime incontinence; (2) plaintiff testified he experienced fecal incontinence regularly, but did not report fecal incontinence to any of his medical providers; and (3) although plaintiff testified to debilitating pain twice per week, his treating physician indicated his paint medication made his life tolerable. *Id.*

Similarly, in *Brown-Hunter*, the court found the ALJ failed to provide specific, clear, and convincing reasons for discrediting the plaintiff. *Brown-Hunter*, 806 F.3d at 495. The court determined that further proceedings would be useful because: (1) medical evidence showed the plaintiff had 5/10 pain, denied neurological deficits and weakness, and was independent in ADLs despite the plaintiff's allegations of having "zero functional capacity" due to lower back pain; and (2) plaintiff's monthly treatment notes indicated her pain medication was adequate and allowing her to function well." *Id.* at 496. Accordingly, the court found that further proceedings regarding plaintiff's limitations due to pain were warranted. *Id.*

In the instant case, the Commissioner asserts outstanding issues remain regarding "evidence of drug-seeking behavior" and "medical opinions which provide a starkly different picture of [plaintiff's] abilities." Def.'s Mot. 18. The Commissioner also argues the court's Opinion "does not

attempt to reconcile" plaintiff's statements with conflicting evidence. The court disagrees. Far from simply "assuming" plaintiff is credible based on the ALJ's erroneous evaluation of plaintiff's alleged drug-seeking behavior, the court provided a lengthy and thorough analysis of the relevant evidence. (O&O 6-10.) After carefully reviewing the record, the court found no evidence of exaggeration of symptoms, which is typically the clearest sign that a plaintiff is willing to be untruthful in order to procure drugs. *Id.* at 8. Although the court notes plaintiff's primary care provider, FNP Fogg, at one point in 2007 indicated he was "concerned" that plaintiff had "drug-seeking behavior," Fogg continued to prescribe pain medication for plaintiff's knee pain at that particular visit and for many subsequent visits, including prescriptions for pain related to plaintiff's knee, kidney stones, and eye pain. (Tr. 388-89, 407-09.) Fogg's continual willingness to prescribe pain medications for plaintiff's various impairments, including knee pain and Crohn's-related pain found to be severe impairments at step two, belie the conclusion the physician found plaintiff's behavior to be drug-seeking.

The court has also carefully reviewed the Commissioner's allegations by the Commissioner that plaintiff unnecessarily sought pain medication elsewhere following his treatment with FNP Fogg. Although the Commissioner and the ALJ indicate plaintiff was possibly seeking pain medication in November 2011, plaintiff had recently undergone a lithotripsy and stent placement due to a kidney stone, which was intermittently causing extreme pain. (Tr. 1174.) Contrary to what one would expect if a physician believed a patient was not being truthful regarding his symptoms, the attending physician provided plaintiff with a short course of pain medication, and advised him to return to the emergency department if his symptoms worsened. *Id.* The Commissioner further alleges plaintiff was inappropriately seeking narcotics in June of 2011 "from another source." Def.'s

Page 25 - OPINION AND ORDER

Mot. 12.  Again, the court has carefully reviewed the record and found that in June 2011, plaintiff treated with Dr. Linford Beachy for left knee pain.  (Tr. 1155-56.)  The doctor diagnosed "chronic ACL tear" with likely "mild MCL sprain," and prescribed non-narcotic pain medication.  (Tr. 1156.) The doctor noted that opioids were not indicated, as he was already prescribed a large dosage of Norco from another physician for plaintiff's Crohn's condition.  *Id.*  In none of these records do any of the physicians indicate plaintiff is exaggerating his symptoms in order to obtain illicit drugs, and in all cases the physicians continued to prescribe pain medication.  Accordingly, the court found the ALJ's credibility finding lacking evidentiary support, and the court finds now finds no inconsistency that warrants resolution via additional proceedings regarding drug-seeking allegations.

The Commissioner also argues further proceedings are necessary to evaluate the "starkly different picture" the medical opinions provide than that about which plaintiff testified.  The Commissioner does not provide further elaboration in order for the court to evaluate the merits of the allegation.  However, as noted above and in the Order, the court found plaintiff's testimony to be consistent with the medical evidence.  Unlike *Treichler*, where there was a clear inconsistency between plaintiff's allegation of daytime incontinence and consistent medical evidence of no daytime incontinence, no such inconsistency exists in the instant case.  While Treichler testified to fecal incontinence but never mentioned it to his medical providers, plaintiff's condition and symptomatology is well documented by his medical providers.  Likewise, while the plaintiff in *Brown-Hunter* alleged "zero functional capacity" despite contrary physical examinations, here, plaintiff's physicians regularly endorsed  allegations of excessive restroom visits in order to deal with his Crohn's condition.  Unlike *Brown-Hunter*, plaintiff did not allege that he was completely unable to work; rather, he alleged his impairment requires many unscheduled breaks throughout the

Page 26 - OPINION AND ORDER

day. Further, plaintiff's physicians did not indicate plaintiff's Crohn's treatment was controlling his symptoms to a degree that would allow him to perform substantial gainful activity. In short, the glaring inconsistencies present in *Treichler* and *Brown-Hunter* are not present in the instant case. Accordingly, as no significant factual conflicts in the record remain unresolved, further proceedings are unlikely to serve a useful purpose. *Treichler*, 775 F.3d at 1100.

As the Ninth Circuit stated in *Garrison*, "the Commissioner simply repeats all of the arguments she has already made . . . that Garrison's testimony should not be accepted . . . [a]t no point does she advance any argument against this evidence that [the court] has not already carefully considered and rejected." *Garrison*, 759 F.3d at 1022. Here, the Commissioner has failed to identify clear or manifest error of law or fact sufficient to amend or alter the court's Order remanding this case for additional proceedings.

The Commissioner does not assign clear error to the court's finding that, taking plaintiff's allegations to be true, the evidence establishes his Crohn's disease requires unscheduled restroom visits of varying length between five and fifteen times per day. (O&O at 18.) Further, the Commissioner does not assign error to the court's finding that based on the VE testimony, plaintiff's need for unscheduled breaks precludes him from performing any of the occupations identified during the hearing. (O&O at 18-19.) Accordingly, as set forth in the Order, the court is satisfied that based on the medical record, consistent testimony from plaintiff and the lay witnesses, and the testimony of the VE, plaintiff is disabled under the Act.

//

//

//

Page 27 - OPINION AND ORDER

*Conclusion*

For the reasons stated above, the Commissioner's motion is DENIED.

IT IS SO ORDERED.

DATED this 22nd of February 2015.

JOHN V. ACOSTA
United States Magistrate Judge

Page 28 - OPINION AND ORDER